Case number 19-7014, El-Sayed Dahman, Appellant v. Embassy of the State of Qatar et al. Ms. Walensky for the Appellant, Ms. Lopez for the Appellant. Good morning, Your Honors. May it please the Court, Sylvia Walensky on behalf of the Appellant. Appellant Mr. El-Sayed Dahman raised four issues on appeal, all sounding in abusive discretion, reversible error by application of the wrong rule and application of the wrong standard. And the issues on appeal are properly before the Court based on the Salazar case 602 F. 3rd at 437 of this circuit with regard to the plain error rule. Appellants asserted below that the Rule 60 should be applicable for vacating the partial default judgment. However, on the plain face of the rule, that rule was inapplicable and it was error for the lower court to entertain. Why isn't it a harmless error since if 55 or 54 were used, it would have been an abusive standard? Your Honor, it had to do with regard to the posture of where the case was. Rule 55C says at the default stage. Rule 60 says at final judgment stage. In these proceedings below, we were in the middle. And both Appellant and the lower court concede that it was in a unique procedural posture and the timing of their entrance into the default judgment. Suppose it's in a unique procedural posture. Why wouldn't the judge have inherent authority to reexamine the default judgment? For two reasons. One, based on strict rule construction, Your Honor, 55C, 54BS suggested by Appellant and 60 are unavailable at that moment in time. We're beyond default. We don't have a judgment yet. And additionally, there are still outstanding issues with regard to damages and with regard to punitive damages. And we were to hear, they entered their appearance a day or two before the hearing on damages issues. And the other issue, Your Honor, is that the tardiness with which the appellees appeared put the case in the posture in which it was. And it's not completely following this because even if the rules that Judge Silberman mentioned don't strictly apply, and I'm not sure about that, but let's just assume they don't. I don't think you'd take the position that the district judge just was without authority at all to revisit the default. Right? I mean, the district judge could have realized I made a mistake on the default or I now knew information with respect to the default, so I'm not going to reconsider whether it was appropriate to enter the default. And if the district judge does have authority either under a rule or under inherent authority to do that, then it seems like the standard would be less than the standard under 60B. And so it seems harmless if the district judge erroneously pinned his ruling on Rule 60 instead of on whatever other source of authority would allow him to reconsider the entry of the default. Well, no, Your Honor. First of all, we have rules in place that particularly point to points in time when a rule can be used and not used. I think that's a critical factor here. Additionally, what the court failed to give proper consideration to was the delay of appellees' appearance in the case. They sat on their hands, they appeared at the 11th hour, and there are five circuits across the nation, the 2nd, 3rd, 4th, 7th, 7th, and 10th, which specifically say in three circumstances, which we have here, when an appellee fails to appear and default judgment is entered, they had notice, fair justice doesn't apply, then their argument is forfeited. And that is an overriding factor. What's the standard of review on that? It's abuse of discretion, isn't it? Abuse of discretion with regard to the five circuits? I don't recall, frankly. I think it would have to be abuse of discretion. And is it relevant at all that we're dealing with, and the judge was dealing with a sovereign entity? Yes, and I don't think that they should be given special consideration merely because they are a sovereign. This issue applies to sovereigns as it does to all parties. And if you purposefully choose, they're a wealthy nation, they had notice of the proceedings, they were properly served, they knew the default. But if I'm right, that was up to the discretion of the district judge, And you would have to conclude it was an abuse of discretion for him to allow the issue to be reopened. Well, no, Your Honor, because if there's a standard that's been established in other circuits to make specific application of a three-pronged test, that is not a discretionary element. That is an element of emphatic test application. And if the test application has the three prongs and they're met in this case, then appellee's delay necessarily forfeits their opportunity to present a form non-convenience argument based on an arbitration clause which is contested. And that is another fact as well, that with regard to the court failing to conduct an evidentiary hearing on the contested factual issues, which were laid forth below, and the appellees at this juncture come in and in their brief, it's integratedly inconsistent. Because on one hand, they want the arbitration clause to apply certain provisions of it. And on the other hand, they're putting forth arguments that are – make it inapplicable. Is this your strongest argument that the judge used the wrong rule on the Federal rules? I think the strongest argument is that there is strict construction of the rules and that if we're going – if it's not raised below, 55C and 54B were not raised below at all. They filed the wrong motion. And they had to do that because they were late on their 59E motion, which was – had 28 days to do. They didn't show up until eight months later. And if we're going to have rules, I would beg the court to have strict construction of the rules, because otherwise the party below could file wrong motions, courts could entertain it in a procedurally incorrect posture, which both the court in its memorandum and the appellees can see in their brief, or it is inappropriate for Rule 60 to be inapplicable at this juncture by the plain language of the rule. And therefore, I think it behooves the court and argued to the court that strict rule construction should be applicable. Don't our precedents suggest that foreign sovereigns should be treated differently in these types of – in these types of contexts? Like, what about practical concepts? Only to the extent that – only to the extent that they have an argument that is viable to be entertained. And the court addressed that when the default judgment was entertained in terms of jurisdiction and subject matter jurisdiction based on the FSIA, based on the El Haddad versus the United Arab Emirate case, which I successfully argued twice before this court. And therefore, we were beyond that point. And the – there is nothing in the precedent to say that simply because you're a foreign sovereign, your compliance with the rules or the standards and tests that apply in this jurisdiction or across the circuits should be inapplicable. And they failed on both of those fronts. I reserve the remainder of my time. Thank you, counsel. Thank you, Your Honors. May it please the Court. I agree 100 percent with Judge Silberman's point that it is harmless error to the extent there was, as Your Honor pointed out, an error at all. I have to remind you, what I said was a question, not a statement. Absolutely, Your Honor. My apologies. I'm not part of your argument on this case. I'm a judge. Absolutely, Your Honor. My apologies. In any event, I do believe that it was harmless error to the extent there was error at all in the application of the standard. And to answer a question that was posed to Ms. Relinsky, Your Honor asked about the standard of review for a Rule 60B ruling. And we cited in our brief, and I believe they cited in their brief, the Salazar case, which says a Rule 60B ruling for abuse of discretion and less rooted in legal error, in which case review is de novo. So how was it not error, at least, to rely on Rule 60B? Because there wasn't a final judgment as of yet. Right. Well, we made the point in our brief that we were acting out of an abundance of caution given the body of case law, which says that a ruling on immunity is sufficiently final for purposes of bringing it to an interlocutory appeal. We were very cautious. We wanted to do the highest standard possible. I think that the lower standards could have been applied. But if it was, in fact, more appropriate to use Rule 54B or Rule 55, then we would have had to satisfy a lesser standard. So I don't see what remand to satisfy a lesser standard would – it would be wasteful to do that. Similarly, I want to reiterate the point about practical concepts. You could have relied on all three. Absolutely. We sure could have. Practical concepts versus Bolivia, that is practically, not entirely, but practically on all fours with this case, where a default judgment was entered and then the foreign state came in and argued both immunity and an arbitration clause, which the court allowed, this court allowed, even despite the fact that the foreign sovereign had entered after the default judgment. As far as Ms. Relinsky's point regarding the evidentiary hearing, none was requested below, and an evidentiary hearing presupposes that there's evidence to weigh. There was no evidence submitted by Ms. Relinsky and Mr. Dachman regarding what the supposed unfairness and inconvenient nature of the arbitral forum would be. So the court did not err by not holding an evidentiary hearing because, A, none was requested and there was no evidence to weigh. Ms. Silvas, can I ask you about the forum nonconvenience argument? I mean, do you think – I mean, is there any limit to when a foreign sovereign can raise a forum nonconvenience argument? I mean, it is an equitable doctrine. And I guess the question is, you know, why should equitable considerations allow a foreign sovereign to bring a claim so late? I mean, is there any limit to when such a claim can be brought? I think there probably is a limit. I don't think this case suggests a limit, but I think, you know, in the Zuckerman v. Spader case, which is not a foreign sovereign case, but in that case it talked about when it's too late to raise an arbitration clause, for example. And so in that case there had been lots of litigation. The party had appeared and acted as if it was fine to litigate the case in a court. In this case it's different because to the extent the embassy appeared in the EEOC proceeding, the arbitration clause was raised. I raised it in my first filing with the court where I mentioned it. I reserved the right in my first appearance with the court to raise any and all defenses. I had just been retained for a week, so I didn't have my arms wrapped around the whole case. And then when we filed our Rule 60b motion, we raised Rule 60b-4 for sovereign immunity and Rule 60b-6 for the arbitration clause. So this case certainly does not pose the limit or demark the line. Finally, I wanted to point out that we did not concede anything with regard to the rules, the standard, and anything regarding Rule 60b. If your honors wanted to hear more about the arbitration clause, I'd be happy to address that otherwise. Thank you, your honors, for your time. Thank you, counsel. Thank you. With regard to legal error, the review for the court is de novo, and we assert that the court below made legal error in considering and entertaining the Rule 60 motion at all. It should have been denied as premature and not applicable. They could have, as the court pointed out, filed any number of things. As I said before, they were out of time on their 59e. They failed to raise 55, which also is inapplicable, and 54b as well. And because of the outstanding tests, the ruling of the court was inappropriate. We would assert that this is a quintessential case for the court to remand and have the partial default judgment reinstated because of failure of rule construction, but also because of the determinations of other circuits regarding when it is too late, and particularly the three-prong test, which states that the actions of the appellee make their assertions before the court in such an untimely manner. What do you do about the Bolivia case? That matter was after the Rule 60 was determined. There was a final judgment in that matter, and there was consideration. I think the biggest difference is that in that case there were no contested facts, whereas here we have contested facts. Is the agreement in place or isn't it? Did it expire on its plain face or didn't it? Did the arbitration clause, was it applicable or not? Had there been an evidentiary hearing, the court would have heard this discrepancy between the Arabic language not having the arbitration clause and the English having it. But your problem with the evidentiary hearing argument is you never proposed any evidence for which the court would have a hearing. Well, we made our argument. It is true that we did not submit an affidavit to that effect, but we did ask for argument, and it was anticipated that at that time we would present our evidence, or the courts could have done what the Southern District of New York does, and that is to say put all your evidence in at this stage, and if an additional hearing is required we will conduct one. But to simply the case law is such that if you merely allow the defendant, the appellee to come in at such a late stage with prejudice, profound prejudice, financial and otherwise, to the appellant, then they should not be – a plaintiff should be given every opportunity to be heard on the contested facts, and that was not – that did not occur in this case, and we deem that to be reversible error. Thank you, counsel. Thank you, counsel. The case is submitted. Thank you.
judges: Srinivasan, Rao, Silberman